Johnson, C. J.
The twentieth section of the above recited statute, authorizes the board of public works to sell, for hydraulic purposes, the surplus water in the canals of the state, their feeders, dams and locks, “ subject to such conditions as they may consider necessary and proper, either in perpetuity or for a limited number of years for a certain annual rent, or otherwise, as they may deem most beneficial for the interest of the state.”
33y section 22, the board is expressly limited to a sale of such surplus water as may remain, “ after supplying the full quantity necessary for the purposes of navigation.”
And to make this limitation effective, section 23- requires that “ every lease grant or conveyance of water-power shall contain a reservation and condition that the state or its authorized agents may at any time resume the privilege or right to the use of water or any portion thereof whenever it may be deemed necessary for the purposes of navigation, or when *612 its use for hydraulic purposes shall be found in any manner to interfere with, and injuriously affect the navigation of either of the canals, feeders or streams from which the water shall be taken for such hydraulic purposes.”
The admitted facts of this case show, that the lease before us contains' such reservation and' condition, and- that the .authorities of the state have properly resumed the right to the use of the water granted by this lease. The sole question involved is, as to the validity of a proviso annexed to said reservation and condition, which reads as follows:
■“ Provided the party of the first part shall first pay or tender to the party of the second part, the value of all lasting improvements now made or hereafter to be made by said second party, said value to be determined by three disinterested persons chosen for that purpose, each party choosing one and the two thus chosen to choose the third.”
If the clause thus quoted is valid, the relator is entitled to the relief sought, otherwise not. Piad the board of public works the power to bind the state to purchase' the improvements, should it be deemed necessary to resume the use of the surplus water for the purposes of navigation or when its use by the lessees will be found injuriously to affect navigation ? We think not; The latter clause of section 23 provides what shall be the right of the lessees in case of such resumption. Whenever such privilege shall be resumed in whole or in part, the sum paid therefor, or the rent reserved, or such portion thereof as shall be determined upon agreeably to the conditions and stipulations of the lease or deed of conveyance aforesaid, shall be refunded or remitted to the purchaser or lessee, his heirs or assigns.”
This clause, which section 23 requires shall be inserted in the lease, and which seems to embrace the only right reserved to the lessee in case of the resumption of the surplus water, is, strange to say, omitted from this lease, and in lieu thereof is the proviso above quoted, which requires of the state, as the condition precedent to the resumption of such water-power, that the state shall first pay, or tender, to the lessee, the value Of all lasting improvements, and which further requires that *613 the state shall pay sucli amount as shall be fixed by arbitrators mutually chosen by the parties.. Whether we regard the obligation to purchase as a condition precedent or subsequent, the result is the same, as in neither case is the power conferred to make such purchase. .
It may well be doubted whether the board of public works, as the agent of the state, has power to enter into arbitration that will bind the state in any matter committed to their charge, in the absence of express legislative authority. However this may be, it is quite clear that no authority is delegated to them to contract away or restrict the right to resume this surplus water, whenever its use for navigation is required. The power to grant or lease water privileges is incidental and subordinate to the public use. The duty of those having charge of the canals to employ all the water, if needed for public use, is imperative. The public right is paramount; so important was this principle deemed by the legislature, that this right to resume the surplus water was required to be inserted in every lease, grant or conveyance. The board possesses no power to surrender this right or hamper themselves in its exercise.' By this so-called proviso, they cannot resume this surplus water, however much it may be needed for the public use, or however injuriously its use by the lessee may affect the navigation of the canals, without purchasing the improvements. Such a restriction upon' the performance by them of an important public trust, is clearly unauthorized, and.is contrary to that public policy under which the canals have been constructed and operated... They were constructed-at great expense for'the public convenience and welfare. They are public navigable highways. The statutes in force from time to time, show how careful the state has been to preserve these great highways, free from all encroachments that might interfere with their usefulness.
The board of public works have power to perfect, render useful, maintain, keep in repair and protect the same. Revised Statutes, 7691. This is a power of superintendence .for the protection and maintenance of the canals, including every thing that pertains to them. They possess no powers, except such as *614 are expressly conferred by law or that are necessarily implied, the purpose .of which is, the maintenance of the canals as public highways.
It is said, however, in argument, that the 20th section in the act of 1840 authorizes the board to grant this surplus water, “subject to such conditions and reservations, as they may consider necessary and proper,” and that this proviso, which makes it a condition precedent that the state shall first pay or tender the value of the permanent improvements upon the resumption of the surplus water, is a condition within the meaning of that clause, which the board could agree to, if they deemed it necessary and proper. It is further said that at that day, it was to, the interest of the state to encourage the development of manufacturing interests along the line of the canals by offering favorable terms to lessees or grantees, so that their products would be transported over the canals, and thus increase the revenue of the state. In reply to this it may be said : 1st. As already shown, the board possessed no power to surrender the duty of performing the public trust committed to their charge, and the limitation, self-imposed, to pay for these improvements before resuming the water, though it may be necessary for the purpose of navigation, was against the public policy of the state, which made it the duty of the board to resume this water at any time when needed for the public use, untrammeled by any condition or any right of the lessee to prevent it.
2nd. The phrase “ subject to such conditions and reservations,” has the same meaning as it has in section 23, where it is . provided, that every lease, grant or conveyance of water power, shall contain “ a reservation and condition that the state or its authorized agents, may at any time resume the use of water or any portion thereof.”
What we mean to say is, that these terms, “ conditions and reservations,” are such as are imposed upon the lessees or grantees of water-power, and not upon the state.
3d. But if we are in error in this construction of the statute, and these words embrace conditions and reservations imposed ■ upon the state, they must bo such as relate to the use of the *615 water for hydraulic purposes, which are in the nature of the quantity used, the manner of its use, &c. It is quite clear they are not broad enough to embrace conditions to be imposed upon the state after the right to use the water ■ has expired, or after the state has abandoned the canal as a public highway. By such resumption or abandonment, which are identical in their results, so far as lessees are concerned (Hubbard v. Toledo, 21 Ohio St. 379), the state is not liable to respond in damages to the lessee. If it were otherwise, the state would be compelled to maintain her canalssat any sacrifice for the exclusive benefit of the lessees of surplus water, or become the purchaser of the property of the lessee, thus making the incidental purpose, paramount to the public use.
If this obligation to purchase is valid in this instance, it is within the power of the board of public works to bind the state to become the purchaser of all the permanent improvements in the state, erected for the use of surplus water leased or granted. They cannot do this, although they might deem it necessary and proper, as a means of developing manufacturing interests along the line of the canals, and thereby increasing transportation over them and thus enhancing the revenues from the canals.
4th. This obligation to purchase, when the surplus water is resumed, is in legal effect, a covenant to purchase, and not a condition annexed to the use of the water.
A condition in its legal signification is something annexed to the grant, while this is in the nature of a stipulation binding the state to purchase, when the lease is terminated. The state covenants that upon the resumption of the surplus water it will purchase the improvements at a price to be fixed by arbitrators. If it be called a condition instead of a covenant, it can only apply to the right of the state to resume water.
. In this sense, it is a condition precedent to such resumption. As such it would be clearly illegal, for as we have shown, there can be no restriction on the right and duty to resume the use of this surplus water whenever it becomes necessary for the public use.
5th. The statute provides what shall be the relief to which *616 the purchaser or lessee is entitled on such resumption. The last clause of section 23 reads thus: “ Whenever such privilege shall be resumed in whole or in part,' the sum paid therefor, or the rent reserved, or such reasonable portion as shall be determined upon agreeable to the conditions and stipulations of the lease or deed of conveyance aforesaid, shall be refunded or remitted to the purchaser or lessee, his heirs or assigns.”
As was said in Hubbard v. Toledo, supra, this clause of the statute expressly negatives the liability of the state for the destruction of the privilege, By resuming the grant, beyond what is therein provided; namely, in case of resumption of such surplus water the sum paid therefor, or the rent reserved, or a reasonable portion thereof shall be refunded or remitted. Hubbard v. Toledo, 21 Ohio St. 379; Elevator Co. v. Cincinnati, 30 Ohio St. 629; Fox v. Cincinnati, 33 Ohio St. 492; Same case, 104 U. S.; State v. Railway, 37 Ohio St. 157. Writ refused.